**ELLYN I. BANK**
Attorney At Law
225 Broadway, Suite 715
New York, New York 10007

212-385-1800
FAX 212-566-8165

October 22, 2007

<u>VIA FACSIMILE 212 805 7912</u>

Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: <u>US v. Giuffre, 07 Cr. 523-01 (JGK)</u>

Dear Judge Koeltl:

    I write with regard to the sentencing of Louis Giuffre which is scheduled for November 2, 2007. I respectfully request as lenient a sentence as possible based on a combination of factors including, but not limited to, Mr. Giuffre's commitment to his young children both emotionally and financially, his strong employment record and his lack of criminal history prior to his divorce proceedings. I respectfully request that Your Honor adopt the guideline calculations set forth in the plea agreement, wherein Mr. Giuffre's advisory guidelines are in Zone B, and impose as lenient a sentence as possible.

## I. LOUIS GIUFFRE'S BACKGROUND

**A. Family Background**

    Before Mr. Giuffre's wife filed for divorce in September of 2000, he never had any problems with the law nor had he ever been arrested. He had a strong work record having worked for Xerox for six years (at an annual salary of $150,000) when he left in 1998 to co-found a small technology business.

1

In 1999, after being married for 8 years Mr. Giuffre's marriage began to fall apart after the birth of his second son (his wife appeared to be suffering from post partum depression). At that time, Mr. Giuffre did everything he could to care for his wife and the children, but sadly she still filed for divorce. In November of 2000 he was forced to leave their home and his ability to see his children was severely restricted. Ever since then his life continued to unravel causing Mr. Giuffre to struggle both emotionally and financially.

Mr. Giuffre was divorced in May of 2002. Originally, he shared joint custody of his two sons, Matthew, age 8, and Louis, age 14, with his ex-wife until she began making unfounded accusations in an attempt to separate him from his sons completely. She sought Orders of Protection from 2005 through 2007, all of which were vacated by the Court because there was no evidence that he engaged in any violent behavior. Mr. Giuffre completed a parenting skills course in September of 2005 (see attached certificate) and has become actively involved with the CRISPE organization (Child's Rights Initiative for Sharing Parents Equally) which focuses on helping children from broken homes (see letter attached). Unfortunately, these disputes over the care of the children continue in Family Court to this day. Mr. Giuffre loves his children dearly and is determined to be an active and positive parent and role model in his sons' lives.

He also has two nephews, Philip, age 10 and John, age 5, who suffer from autism. He plays an active role in their lives and has been there to help support their many challenges (see letter from Christina Toepfer, his sister, attached). He is also involved in local foundations for autism.

**B. Personal Background**

Mr. Giuffre is a college graduate and family man with a record of steady employment until 2000 when he was 39 years old. He has no history of drug addiction or substance abuse

(although he did plead guilty to a prior DWI in May of 2001 which is listed in his criminal history).

Mr. Giuffre is extremely close with his two sons, but because of tremendous financial responsibilities, he had to move in with his parents in Virginia one month ago. Unfortunately, he has not been able to see his children on a weekly basis since then. However, Mr. Giuffre speaks to his sons at least two times every day and sees them every chance he gets. His presence in their lives at their young ages is crucial to their development, schooling and emotional well-being. He intends to move back to New York as soon as he is employed full time and seek sole custody of his children.

## II. OFFENSE CONDUCT

Mr. Giuffre was arrested on December 4, 2006 and released on a $50,000 PRB cosigned by his mother with travel restricted to SDNY, EDNY and DNJ. He has been at liberty since the date of his arrest without incident.

On June 11, 2007 Mr. Giuffre pled guilty, pursuant to a plea agreement, to the charge of Interstate Transportation of Stolen Property in violation of 18 USC 2314.

**THE PLEA AGREEMENT CONTAINED THE FOLLOWING STIPULATIONS:**

**A. Offense Conduct**

1. His base offense level was six, based on the Guideline applicable to the offense charged in count 1 in violation of 18 USC 2314.

2. Four points were added because the amount of intended loss was more than $10,000 but not more than $30,000.

3. Two points were deducted because he accepted responsibility for his conduct in a timely fashion by pleading guilty prior to the government preparing for trial.

4. In accordance with #1-3 above, the applicable guidelines offense level is eight.

**B. Criminal History Category**

5. On May 15, 2001, Mr. Giuffre was convicted of drunk driving, aggravated unlicensed operation of a motor vehicle and driving with imprudent speed in violation of Sections 1992, 511(A) and 1180 of the New York Vehicle and Traffic Law. On November 11, 2005, the defendant was convicted of criminal contempt in the second degree in violation of Section 215 of the New York Penal Code. Although neither sentence resulted in any criminal history points, 2 points were added because the defendant committed the instant offense while under the supervision of the Suffolk County Probation Department.

6. In accordance with #5 above, the defendant's criminal history category was set at II.

7. With an offense level of eight and a criminal history of two, his advisory guideline sentence was four to ten months.

8. The parties agreed not to seek any departure from the stipulated guidelines.

9. Both parties agreed not to seek a sentence outside the stipulated guidelines range.

## III. PRESENTENCE REPORT

**A. PSR Report**

On September 10, 2007, the Department of Probation issued a presentence report (PSR). Mr. Giuffre's guidelines offense level was 10 (within Zone C) with a criminal history of III. The PSR raised the guidelines offense level to 10 based on their addition of a two level role adjustment for abuse of trust. Further, the criminal history computation in the PSR raised the criminal history category to III based on their addition of one point for each of the defendant's prior convictions, which were not counted in the plea agreement, and two points for being on probation (thus the PSR determined a guidelines range of 10-16 months).

**B. Objections with respect to the Presentence Report**

On September 14, 2007, I sent a letter to US Probation Officer Zondra Wilson with respect to objections and corrections to the presentence report (see copy of letter attached and discussion in section IV below).

## IV. REASONS TO IMPOSE A SENTENCE PURSUANT TO THE PLEA AGREEMENT

**A. The PSR incorrectly Assigned Mr. Giuffre to a Criminal History III.**

**(1) He Should Not Have Been Assessed Three Criminal History Points as a Result of the November 4, 2005 Conviction for Criminal Contempt**

**(a)** The PSR should not have placed Mr. Giuffre in Criminal History Category III since he does not have the four points which form the basis for that classification.

As stated in my objection letter, the PSR relied upon a conviction from November 4, 2005 for Criminal Contempt in the Second Degree to establish one criminal history point. The

5

fact is that this conviction and sentence was vacated on December 5, 2006 whereupon Mr. Giuffre pled guilty to disorderly conduct, a violation and not a crime, in connection with this offense (attached is the transcript of December 5, 2006). Accordingly, pursuant to USSG § 4A1.2(c)(1) this conviction should not give Mr. Giuffre a criminal history point.

**(b)** Similarly, insofar as the PSR also assessed two points because Mr. Giuffre was supposedly on probation at the time of this offense, because the conviction and sentence on the contempt offense was vacated and superseded by the aforementioned plea to disorderly conduct, he was not on probation at the time of the instant offense. Therefore, he should not be assessed two additional points either.

**B. Mr. Giuffre Should Not Have Received a Two Point Enhancement For Abuse of Trust**

In addition, the two point enhancement was not contained in the plea agreement that Mr. Giuffre relied upon when he pled guilty. The facts of the instant case do not support a two point enhancement for abuse of trust which is why it was not contained in the plea agreement.

The AUSA Nick Goldin stands by the plea agreement. Therefore, Mr. Giuffre should not receive a two point enhancement in his guideline calculations for abuse of trust.

**C. Mr. Giuffre's Personal History and Post Conduct Rehabilitation**

Prior to his separation, Mr. Giuffre was employed by Xerox for six years (at an average salary of $150,000 per year) until he went out on his own in 1998 by co-founding a small technology company called Galt Corporation, which was dissolved after his divorce in 2002. Following the dissolution, he started a new business, "Pocket Solutions Inc." which he was subsequently locked out of in July 2003. This company is now involved in two civil lawsuits where Mr. Giuffre is the plaintiff (see letter by Robert Siegal attached). Mr. Giuffre then worked as an independent consultant for various companies, trying to make enough money to support his

children, until he was employed full time by Netsoft USA, the complainant in the instant case. He was fired by Netsoft in July of 2006, and then went to work for Incremax Solutions (also involved in the instant case).

Mr. Giuffre has been struggling to pay child support in the amount of $816.00 per week, something he will not be able to do if he is incarcerated. He has been working very hard to comply with the court orders, however, he has only been able to find odd jobs as a result of the instant case, and keeping up with the payments has been almost impossible. The release of press articles concerning his involvement in the instant case in the New York Times, Newsday and other online publications has made seeking employment in the technology field very problematic.

Although he has petitioned the Family Court for a downward modification of this order, he remains current in his child support. He has spent months working multiple jobs as a warehousman at Worldwide Freight Systems in Linden, NJ where he has unloaded trucks and taken inventory.

**D. Mr. Giuffre Has Full Time Employment Awaiting Him After He Is Sentenced**

In his determination to support his children, Mr. Giuffre recently found a salaried position at XauXa Corporation, with an offer to begin in early October, however, as a result of this case, he has requested that his start date be delayed until after he is sentenced (see letter attached from Michael Queralt, President of XauXa Corporation).

**E. Mr. Giuffre's Support Network**

Mr. Giuffre has the love and support of his parents (with whom he is presently residing in Bristow, Virginia) and his sister and her family. This close-knit family is willing to do whatever

they can to help him rebuild his life and maintain his relationship with his children, including providing him with financial and emotional support during this difficult time.

## V. CONCLUSION

Mr. Giuffre has accepted responsibility for his actions and has recognized the mistakes he made during a very tumultuous time in his life, and he has made every effort to rehabilitate himself. Incarcerating a man such as Mr. Giuffre would serve only the limited purpose of punishment while keeping him from his sons. A sentence of probation or house arrest would punish him without preventing him from being with his children and allow him to start the full time employment referenced above to support his children and continue his own personal financial and emotional rehabilitation.

For the foregoing reasons, I respectfully request that the court impose a sentence that is as lenient as possible.

Respectfully submitted by,

Ellyn I. Bank, Esq.
Attorney for Louis Giuffre

cc:    AUSA Nick Goldin (via fax: 212 637 2429)